**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven P. Hines,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-21-01477-PHX-SPL<br><br>**ORDER** |

　　　　Plaintiff Steven P. Hines challenges the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") denial of his Application for Social Security Insurance Benefits under Title II of the Social Security Act ("the Act"). Plaintiff filed a Complaint with this Court seeking judicial review of that denial. (Doc. 1). The Court has reviewed and now addresses Plaintiff's Opening Brief ("OB"), Defendant's Answer ("AN"), Plaintiff's Reply ("Reply"), and the Administrative Record ("AR"). The Court finds the Administrative Law Judge ("ALJ") improperly rejected Plaintiff's symptom testimony, and in so doing committed legal error and based her decision on less than substantial evidence. Accordingly, the Court remands the case for further proceedings.

**I. BACKGROUND**

　　　　Plaintiff filed the present application Disability Insurance Benefits on June 17, 2019, alleging disability as of May 20, 2019. (AR 220, 222). The Social Security Administration ("SSA") denied his application at the initial and reconsideration levels of administrative review. (AR 85, 106, 109, 133). Plaintiff then requested a hearing before an administrative law judge. (AR 16). Following the hearing, the ALJ issued a decision finding Plaintiff "not

disabled."[1] (AR 1, 28). The Appeals Council denied Plaintiff's request for review and the ALJ's decision became final. (AR 1).

In her decision, the ALJ found that Plaintiff had severe[2] impairments of degenerative disk disease and peripheral neuropathy. (AR 18). Despite these impairments, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) except for the following limitations: he can frequently balance or kneel and occasionally crawl, crouch, stoop, or climb ramps or stairs, but can never climb ladders, ropes, or scaffolds. In addition, the claimant can only stand or walk for 4 hours in an 8-hour workday." (AR 22).

The ALJ also determined Plaintiff's mental impairments were non-severe as he experienced "no limitation in understanding, remembering, or applying information; no limitation in interacting with others; no limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself." (AR 19). Based on the above and testimony from a neutral vocational expert ("VE"), the ALJ found Plaintiff could perform work as ticket taker, information clerk, or blood donor unit assistant and was therefore not disabled. (AR 27).

**II. THE SEQUENTIAL EVALUATION PROCESS**

In determining whether a claimant is disabled for the purposes of the Act, the ALJ must follow a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but that burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry

---

[1] "Disability" is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A).

[2] "[A]ny impairment or combination of impairments which significantly limits [a person's] physical or mental ability to do basic work activities" is considered "severe." 20 C.F.R. § 404.1520 (c)

ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii) If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the analysis proceeds to step four where the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. *Id*. If he cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot, he is disabled. *Id.*

**III. LEGAL STANDARD**

When determining whether to reverse the Commissioner's decision, this Court only reviews issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court will affirm the Commissioner's final ruling unless it is based on legal error or lacks the support of substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Though the Court must consider the record as a whole, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**IV. DISCUSSION**

Plaintiff presents five issues on appeal: (1) whether the Commissioner erred in failing to find Plaintiff's mental impairments severe at step two, (2) whether the Commissioner erred in rejecting certain medical opinions, (3) whether the Commissioner provided clear and convincing reasons for rejecting Plaintiff's symptom testimony, (4) whether the Commissioner erred in rejecting lay witness testimony, and (5) whether the Commissioner improperly relied on vocation testimony given in response to an incomplete hypothetical. (OB at 1). The Court addresses each argument in turn.

### A. THE ALJ DID NOT ERR IN FINDING PLAINTIFF'S MENTAL IMPAIRMENTS NON-SEVERE.

<u>Dr. Geary's Medical Opinion</u>

Dr. Brent Geary, a licensed psychologist, examined Plaintiff on October 14, 2020. (AR 2256). Dr. Geary found that Plaintiff frequently contemplated suicide and that his mental state was "deeply troubling" despite the implementation of ketamine therapy. (AR 2262). Dr. Geary also noted that Plaintiff suffered multiple head injuries in his youth. (AR 2262). Dr. Geary proposed that Plaintiff's traumatic brain injuries may be the reason his depression is resistant to treatment. (AR 2262).

Dr. Geary administered several tests during the examination. Plaintiff scored 18 out of 30 on the Montreal Cognitive assessment, suggesting "significant cognitive impairment." (AR 2257). Dr. Geary noted that although Plaintiff was cooperative with the examination, he became increasingly upset about his performance during psychometric testing. (AR 2257). He wept on several occasions. (AR 2257). Dr. Geary also noted Plaintiff's tangential speech, dysphoric affect, nervous demeanor, and shortened attention span. (AR 2257).

Plaintiff scored in the extremely low range on the Wechsler Memory Scale. (AR 2261). Dr. Geary noted that Plaintiff's memory was "defective and untrustworthy," that he was slow to process information, and that "his thinking has become far less effective than that to which he was accustomed." (AR 2262). Dr. Geary opined that Plaintiff had

"moderately severe" limitations in his ability to understand, remember, and carry out detailed instructions, to respond to work pressures, to perform activities within a schedule, and to interact with the public. (AR 2264, 2265). Additionally, Dr. Geary opined that Plaintiff would struggle to tolerate stress, sustain an ordinary routine, respond appropriately to changes in a work setting, and to set goals and plans. (AR 2264–65). Dr. Geary also found that Plaintiff's slow pace would cause him to consistently fall behind in execution of duties. (AR 2263). Plaintiff's poor stress tolerance led Dr. Geary to conclude Plaintiff would not be able to function in fast-paced or pressure-filled work environments. (AR 2263).

Dr. Geary concluded that Plaintiff's impairments "pose significant limitations in [his] ability to remember and carry out job directions, especially complex or detailed ones." (AR 2263). In his report to the ALJ, Dr. Geary opined that Plaintiff met the qualifications for listings 12.02, 12.04, and 12.06. Ultimately, Dr. Geary found that "the psychological symptoms that affect [Plaintiff] would make it practically impossible for him to sustain regular attendance and be reliable in the performance of employment requirements." (AR 2263).

## The ALJ's Findings

The ALJ found that Plaintiff's mental health impairments were not severe. (AR 19–20). In reaching this conclusion, she discredited Dr. Geary's medical opinion. (AR 20–21). Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of an examining doctor. (OB p. 13) However, this is not the proper standard.

Under the former SSA regulatory scheme, ALJs gave a treating physician's opinion "'substantial weight' and could only reject such opinion by providing 'clear and convincing reasons,' if the opinion is uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise." *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). In 2017, the SSA revised its regulations regarding the evaluation of medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). As Plaintiff filed his case after 2017, it is governed by the new regulations.

Accordingly, the ALJ was not required to adhere to a hierarchy of medical opinions but rather to articulate the persuasiveness of medical opinions using factors set forth in the regulations. 20 C.F.R. §§404.1520c(a)–(b). Supportability and consistency are the most important of these factors but ALJs may also consider the nature of the treatment relationship, the medical source's specialization, and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§404.1520c(a)(c).

Here, the ALJ found Dr. Geary's opinion not persuasive because he only examined Plaintiff once, his assessment was in the form of a checkbox, Dr. Geary's report showed "no awareness of the possibility that [Plaintiff] may have been embellishing his symptoms," and his opinions were inconsistent with Plaintiff's daily activities as well as the medical evidence. (AR 21). Because the ALJ clearly articulated the reasons behind his persuasiveness determination, the Court will uphold his decision to discredit Dr. Geary's opinion so long as it is supported by substantial evidence. *Woods*, 32 F.4th at 787.

**1. The ALJ Did Not Err in Finding That Dr. Geary's Opinion Conflicted with the Medical Evidence.**

The ALJ found Dr. Geary's assessment unpersuasive in part because it conflicted with the significant amount of "unremarkable mental status evaluations" and the description that Plaintiff's depression was in "full remission." (AR 21, 1996, 2030). Following the issuance of the ALJ's decision, Plaintiff submitted a letter from Dr. Geary to the Appeals Council. (AR 36–38).

In his letter, Dr. Geary asserts that his medical opinion does not conflict with the mental status evaluations ("MSEs") because Plaintiff suffers from *recurrent* major depressive disorder. (AR 37). As such, Dr. Geary found it was "not unusual" that Plaintiff would "present between occurrences, essentially free from symptoms, only for the depression to recur." (AR 37). Dr. Geary also stated that the MSEs are "mere screening instruments" that do not reflect a patient's mental health. (AR 37).

It is the ALJ's duty to resolve conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Though Dr. Geary may take issue with the MSEs, the

- 6 -

ALJ had a right to depend on them. Furthermore, Dr. Geary's opinion also contrasted with those of the state's consultive psychological examiner (who found Plaintiff's presentation exaggerated and disingenuous), the agency's medical consultants (who found Plaintiff had no or mild mental limitations), and Plaintiff's long-term therapist.[3]

Plaintiff also argues that the MSEs were completed by doctors treating Plaintiff's physical pain, not mental health providers. (OB at 11). But Plaintiff fails to cite any caselaw or regulations that state only mental health providers may observe and comment on a patient's mental status. Furthermore, as the MSEs are clinical findings, they qualify as "other medical evidence" under 20 C.F.R. § 404.1513(a)(3). The ALJ was therefore entitled to rely upon them when making her determination. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (stating the ALJ relies on all the medical and other evidence in [the] case record" when determining a claimant's RFC). The Court finds no error in the ALJ's determination that Dr. Geary's opinion conflicted with the medical evidence.

**2. Plaintiff Argues the ALJ Erred in Rejecting Dr. Geary's Opinion Because It Was in The Form of a Checkbox List.**

The ALJ noted that Dr. Geary's assessment largely "depend[ed] on general statements and check box form," and consequentially, that Dr. Geary did not "provide clear supporting explanation for his conclusions complete with citations to his examination report." (AR 21). Plaintiff argues Dr. Geary clearly defined the terms used on the checkbox form, provided supporting explanations for the test results, and outlined Plaintiff's work-related mental limitations. (OB at 11). Defendant contends that despite the definitions, Dr. Geary's report was "nevertheless[] a checklist format and the ALJ acted reasonably in pointing this out." (AN at 7).

---

[3] Dr. Geary opined Plaintiff would have "moderately severe" difficulty interacting with the general public. (AR 2265). However, Plaintiff's long-time therapist, Ms. Bloom, noted he had no limitations in social functioning. (AR 2051). The ALJ properly noted that Ms. Bloom is not a medically acceptable source but is a "treating source who developed a long-term familiarity with the Plaintiff's condition." (AR 20). ALJ found her opinion mirrored the MSEs and conformed to the opinions of the state agency psychological examiners. (AR 20).

Whether the ALJ erred in rejecting a medical opinion because it is in the form of a checkbox is a fact-specific inquiry. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014. In *Batson*, the Ninth Circuit upheld the ALJ's rejection of a treating physician's medical opinion because "it was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of Batson's medical condition, and was based on Batson's subjective descriptions of pain." *Batson,* 359 F.3d at 1195. The Ninth Circuit came to the opposite conclusion in *Garrison v. Colvin.* There, the defendant argued that the ALJ was entitled to reject treating physicians' opinions because they were presented in checkbox form. *Garrison*, 759 F.3d 995 at 1014. The Ninth Circuit disagreed because checkbox forms "did not stand alone: they reflected and were entirely consistent with the hundreds of pages of treatment notes created by [the physicians] in the course of their relationship with [the plaintiff]." *Garrison*, 759 F.3d 995 at n.17.

The Court recognizes that Dr. Geary submitted several pages of test results and narrative observations along with his checklist form. (AR 2256–64). However, his seven-page report is a far cry from the hundreds of treatment notes described in *Garrison*. *Garrison*, 759 F.3d at 104 n.17. Moreover, unlike the doctor in *Garrison*, Dr. Geary did not have a long-term treatment relationship with the patient. (AR 21). He examined Plaintiff only once for a period of two hours. (AR 37). Plaintiff points out that the consultative examiner—upon whose opinion the ALJ relied—also examined Plaintiff one time and that the state agency psychiatrists did not examine Plaintiff at all. (OB at 11). But the ALJ found their opinions persuasive because, unlike Dr. Geary's report, they did not conflict with the medical evidence. (AR 20). The ALJ stated specific reasons supported by the record for taking issue with Dr. Geary's checkbox form. The Court finds no error.

**3. ALJ's Error Regarding Plaintiff's Ability to Manage His Finances Is Harmless.**

The ALJ determined Plaintiff could manage personal care, prepare meals, perform household chores, manage personal finances, shop in stores, and drive "without any

significant mental difficulties." (AR 21). Plaintiff notes that the ALJ mistakenly claimed Plaintiff could manage his personal finances when both Plaintiff and his wife stated that she handles the couple's finances. The Court find this error harmless as it is unlikely to change the outcome of the disability determination. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse the decision of the ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (internal quotation marks and citation omitted)).

### 4. The ALJ Erred in Finding That Dr. Geary's Opinion Did Not Account for Malingering.

The ALJ states Dr. Geary's report shows no awareness of the possibility that Plaintiff may have embellished his symptoms and claims Plaintiff has a history of doing so. (AR 21). In support of this allegation, the ALJ cites Dr. Worsley's report. Dr. Worsley examined Plaintiff on August 30, 2019. (AR 1445). In her summary, Dr. Worsley described Plaintiff's presentation as "disingenuous and exaggerated." (AR 1447). She also noted that Plaintiff's December 2018 and July 2019 Honor Health records indicated his depression was in full remission, but Plaintiff presented as "a completely broken man" during their evaluation. (AR 1445–46). The inconsistency between Plaintiff's recent medical records and his demeanor at the evaluation contributed to Dr. Worsley's concerns about the genuineness of his presentation. (AR 1445–46)

Dr. Geary disagreed with Worsley's opinion. (AR 37). Defendant argues that the ALJ acted within her authority by resolving the conflict between the doctors' opinions. (AN at 6–7). Though Defendant is correct that an ALJ has the right to resolve conflicts in the evidence, this does not address Plaintiff's argument that the ALJ mistakenly claimed Dr. Geary failed to account for the possibility of malingering in his opinion. (OB at 11). In Dr. Geary's report, he documents three different tests used to determine whether Plaintiff exaggerated his memory limitations and determined he did not. (AR 37, 2261). The record clearly refutes the ALJ's assertion that Dr. Geary did not consider the possibility that

Plaintiff embellished his symptoms.

Though the ALJ erred in claiming Dr. Geary did not account for malingering in his report, the error harmless. In determining the persuasiveness of each medical expert's opinion, the ALJ focused on their consistency with record evidence. (AR 20–21). The ALJ found Dr. Lazoritz, Dr. Waldman, and Ms. Bloom's opinions persuasive because they mirrored the "the overwhelming number of [Plaintiff's] mental status evaluations" and were consistent with Plaintiff's daily activities. (AR 20). In contrast, the ALJ found Dr. Geary's opinion unpersuasive largely because it conflicted with the same evidence. (AR 21). As the ALJ's error was unlikely to affect her opinion on the persuasiveness of Dr. Geary's opinion—and consequentially her ultimate disability determination—we will not remand on this ground. *Tommasetti*, 533 F.3d at 1038.

In sum, the ALJ clearly articulated her reasons for finding Dr. Geary's opinion unpersuasive and her findings are largely supported by the record. The ALJ committed harmless error in claiming Plaintiff manages his finances and that Dr. Geary did not account for malingering.

**B. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S REJECTION OF DR. SALARI'S MEDICAL OPINION.**

Plaintiff alleges the ALJ improperly rejected Dr. Salari's medical opinion. (OB at 13). Dr. Nima Salari examined Plaintiff on October 7, 2020. (AR 2238). He determined Plaintiff could sit, stand, and walk for a total of 2 hours in an 8-hour workday. (AR 2250). Dr. Salari also concluded Plaintiff could occasionally bend, squat, and reach, but never crawl or climb. (AR 2252). Additionally, he determined Plaintiff could rarely move his neck, should never be around unprotected heights or moving machinery, and could only lift up to five pounds on a continuous basis. (AR 2251–52).

The ALJ found Dr. Salari's opinion unpersuasive because he examined Plaintiff only once, the limitations he outlined did not include citations to the record, and the report conflicted with the medical evidence as well as Plaintiff's daily activities. (AR 25). Consequentially, the ALJ did not incorporate the functional limitations outlined by Dr.

Salari into the Residual Functional Capacity determination. (AR 25).

### 1. Plaintiff Advocates for the Implementation of an Obsolete Standard.

As a preliminary matter, Plaintiff argues that "the revised agency regulations do not replace the long-standing Ninth Circuit precedent that affords primacy to treating physician medical opinion evidence." (OB 14). The Court disagrees. The Ninth Circuit has held that as an "intervening higher authority, the SSA's revised regulations displace the court's caselaw." *Woods,* 32 F.4th at 787. This holding marked the end of the medical opinion hierarchy. *Id*. The Court will support the ALJ's rejection of medical testimony so long as the ALJ articulates the persuasiveness of the medical evidence and her explanation is supported by substantial evidence. *See Woods*, 32 F.4th at 793.

### 2. The ALJ Did Not Err in Finding Dr. Salari's Opinion Conflicted with Plaintiff's Ability to Perform Activities of Daily Living.

In her decision, the ALJ noted that the marked limitations in Dr. Salari's opinions were inconsistent with Plaintiff's self-reported daily activities. (AR 25). Plaintiff argues that Dr. Salari's report "did not indicate that [Plaintiff] was totally incapacitated" and that her determination that Plaintiff could sit, stand, and walk on a limited basis is consistent with Plaintiff's activities of daily living. (OB at 19).

Dr. Salari determined Plaintiff could frequently hold his head in a sustained neutral position but could rarely move it in any other direction. (AR 25, 2251). The ALJ found this inconsistent with Plaintiff's testimony that he could still drive, prepare simple meals, and manage personal hygiene tasks such as bathing, dressing himself, and haircare.[4] (AR 408, 407, 438, 449). The ALJ determined the marked limitations in Dr. Salari's opinion conflicted with Plaintiff's testimony. (AR 25). The Court will not disturb the ALJ's determination as it is a rational interpretation of the record evidence. *Molina v. Astrue*, 674 F.3d 1104,1111 (9th Cir. 2012). ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by

---

[4] Plaintiff did note that he struggles to put his shoes on and experiences "shooting pain [when] getting off the toilet at times." (AR 438).

- 11 -

inferences reasonably drawn from the record.").

### 3. The ALJ Did Not Err in Finding Dr. Salari's Opinion Conflicted with The Medical Evidence.

The ALJ also found that Dr. Salari's assessment was inconsistent with the medical evidence that Plaintiff's surgeries "led to a significant improvement in his condition, including the elimination of many of his pain symptoms." (AR 25). Plaintiff counters that the functional deficits Dr. Salari noted were present after Plaintiff's multiple surgeries. (OB at 19, Reply at 7). Defendant argues that "[t]he fact Dr. Salari examined plaintiff after his surgeries does not detract from the ALJ's consideration of conflicting evidence." (AN at 12). The Court agrees. The ALJ cites various exhibits noting Plaintiff's improving symptoms. (AR 25). These records conflicted with Dr. Salari's opinion. The ALJ resolved this conflict against Plaintiff, and the Court will not re-weigh the evidence on appeal. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) ("[Q]uestions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." (quotation omitted)).

### 4. The ALJ Properly Rejected Dr. Salari's Opinion That Plaintiff's Conditions Met the Requirements for Certain Listings.

Dr. Salari opined that Plaintiff met the requirements for listing 1.04(A). The ALJ rejected his opinion, in part, because of Dr. Salari's lack of familiarity with the disability program. (AR 25). The ALJ also claimed Dr. Salari's examination notes failed to highlight certain key requirements of the listing and did not include citations to the record. (AR 25). Plaintiff correctly notes that contrary to the ALJ's findings, Dr. Salari's report does state that Plaintiff had a positive straight leg raise test, references muscle weakness and sensory reflex loss, and notes limitations in his lumbar range of motion. (AR 2242–43). However, Defendant contends Dr. Salari's report is internally inconsistent as he failed to identify Plaintiff's straight leg raise test in the checklist. (AR 2249). Furthermore, Dr. Salari's results concerning muscle atrophy, weakness, and sensory loss are based on Plaintiff's self-report. (AR 2238). The ALJ resolved this conflict against Plaintiff, and the Court will not

substitute her determination with its own. *Morgan*, 169 F.3d at 601.

Plaintiff directs us to the letter Dr. Salari submitted to the Appeals Council. In this letter, Dr. Salari describes his disagreement with the ALJ's determination that Plaintiff did not meet the requirements for listing 1.04(A). But only the ALJ can determine whether a listing has been met. A medical source's opinions on such matters are "inherently neither valuable nor persuasive." 20 C.F.R. §§404.1520b(c) & (c)(3)(iv). The ALJ did not err in finding Dr. Salari's opinion unpersuasive.

### C. THE ALJ ERRED IN REJECTING PLAINTIFF'S SYMPTOM TESTIMONY.

An ALJ must perform a two-step analysis to determine the credibility of a claimant's pain and symptom testimony. *Lingenfelter v. Astrue*, 504 F.3D 1028, 1035–36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If the claimant meets this burden and there is no evidence of malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the testimony. *Id.* at 1036.

**1. The Court Can Readily Discern Which Aspects of Plaintiff's Testimony The ALJ Found Inconsistent With the Record.**

Plaintiff argues the ALJ did not identify specific records contrary to any of Plaintiff's specific statements. (OB at 21). But, the ALJ is not required to perform a "line-by-line exegesis of the claimant's testimony" to meet the clear and convincing standard. *Lambert v. Saul,* 980 F.3d 1266, 1277 (9th Cir. 2020). Moreover, if an ALJ's decision is made "with less than ideal clarity, a reviewing court will not upset the decision on that account if [his] path may reasonably be discerned.*" Alaska Dept. of Edvtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004); *see Brown-Hunter*, 806 F.3d at 492 (applying this standard to social security).

Here, the ALJ referenced Plaintiff's assertion that his impairments restrict him from lifting more than 5 pounds, squatting, bending, standing, sitting, kneeling, stair climbing,

remembering, completing tasks, concentration, getting along with others, and walking for more than a block before needing a break. (AR 22). The ALJ then identified the daily activities he deemed inconsistent with Plaintiff's stated limitations, those being personal hygiene, preparing simple meals, performing light household chores, driving, and occasional grocery shopping. (AR 23). As the Court can draw a reasonable inference that the ALJ finds Plaintiff's daily activities inconsistent with the aforementioned limitations, the Court will not disturb the determination on this ground. *Id.*

### 2. Plaintiff's Symptom Testimony Did Not Conflict with Medical Evidence.

ALJ found that though Plaintiff's medically determinable impairments "could reasonably be expected to cause his alleged symptoms," his testimony regarding the "intensity, persistence, and limiting effects" of the symptoms was inconsistent with the evidence in the record." (AR 23). Specifically, the ALJ claims Plaintiff's back surgeries "helped to improve his pain symptoms overall" and that when symptoms did arise, they appeared "amenable to management with a prescribed course of pain medication." (AR 23). In support of these assertions, the ALJ points to sections of exhibit 31, Plaintiff's office treatment record, which notes improved pain symptoms following his March 2020 lumbar surgery. (AR 23, 2146). On April 20, 2020, Plaintiff reported continued lower back pain post-op but "doing much better" since his last follow up. The doctor noted medication helped adequately control Plaintiff's pain. (AR 2141). One week later, his doctor noted Plaintiff was doing well overall but reported "increased and uncontrolled pain" in the mornings and evenings as well as difficulty sleeping. (AR 2137). In July 2020, Plaintiff reported progressively improving back pain post-op. (AR 2134).

A closer examination of exhibit 31 demonstrates Plaintiff did not experience sustained improvement. Office treatment records from Plaintiff's August 4, 2020 visit indicate increasing pain with prescribed physical therapy that is not adequately controlled by medication, resulting in med increase. (AR 2117). On August 13, 2020, Plaintiff reported that though the right side of his back felt great post-op, he was experiencing ongoing significant lower back pain on his left side and chronic left-sided quad weakness.

(AR 2113). Plaintiff reportedly struggled with his morning walks because of the pain. (AR 2113). In his August 31, 2020 visit, the doctor also noted Plaintiff's frustration with his ongoing pain, which he rated as a minimum level 6, maximum 10. (AR 2107). The ALJ's assertion that Plaintiff's pain symptoms "seem amenable to management with a prescribed course of pain medication" completely ignores later treatment notes which demonstrate increasing pain. When reviewing an ALJ's decision, we must consider the record as a whole and "may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison*, 759 F.3d at 1009. Here, the ALJ improperly relied on a non-representative sample of medical records to find Plaintiff's chronic pain improved after surgery.

Regarding Plaintiff's neuropathy, the ALJ claims Plaintiff is nevertheless capable of performing within the prescribed RFC. (AR 24). In defense of this assertion, she claims Plaintiff denied experiencing any symptoms of neuropathy on "a number of occasions." (AR 23–24). However, the ALJ only references one set of clinical notes in which Plaintiff denied feeling weakness, unsteadiness, and numbness. (AR 24, 2219). Moreover, the very next page of those clinical notes states Plaintiff experienced decreased pinprick sensations in his left thigh, both legs, and right hand. (AR 2220-21). The ALJ also asserts that the vast majority of Plaintiff's post-op physical examinations document "relatively normal diagnostic results" with findings of normal gait, muscle tone, and muscle bulk. (AR 24). In defense of this assertion, the ALJ cites Exhibits 3F and 29F. (AR 24 citing AR 617–18, 2055) But Exhibit 3F shows clinical notes from 2015, before the AOD. (AR 617–20). Meanwhile, Exhibit 29F makes no mention of Plaintiff's muscle tone or bulk. (AR 2055). The Court cannot say these exhibits support the ALJ's conclusion. (AR 24).

**3. Plaintiff's Daily Activities Do Not Conflict with His Symptom Testimony.**

Plaintiff argues his activities of daily living are not inconsistent with his testimony that he cannot sit, stand, walk or pay attention long enough to make it through a typical workday. (OB 20). The Court agrees. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The question is not whether Plaintiff can participate in the activities

of daily living *at all*, but whether these activities are "easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 855 F.2d at 603.

Plaintiff's daily activities do not contradict his other testimony. Both Plaintiff and his wife state that his ability to manage his personal hygiene was not without difficulty. Specifically, he struggled to get off the toilet due to back pain, could not tie his shoes, and struggled to dry his lower extremities after a shower. (AR 448, 79). As for chores, Plaintiff stated that his wife does all the outdoor chores and a vast majority of indoor chores. (AR 50, 449, 497). Plaintiff's contributions are limited occasionally to putting away dishes, wiping down counters and taking the trash out. (AR 449, 497). While his wife is at work, he prepares simple meals for himself like cereal, sandwiches, and frozen dinners. (AR 449). Plaintiff testified that he can only walk for 15–20 minutes before getting extremely sore and tired. (AR 67–68). At that point, he returns home to manage his pain with a TENS unit, ice packs and heating pads. (AR 68). Plaintiff also testified that engaging in activity for an hour leaves him "wiped out," and unable to walk the next day. (AR 79). On this record, the Court cannot say Plaintiff's daily activities contradict his testimony. The ALJ's decision was not supported by substantial evidence.

### D. THE ALJ DID NOT PROVIDE GERMANE REASONS FOR REJECTING LAY WITNESS TESTIMONY.

Plaintiff's wife, Patricia Hines ("Mrs. Hines"), submitted a third-party function report to the ALJ. (AR 448-54). The ALJ considered her report but declined to "provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c)." (AR 26). 20 CFR § 404.1520b(c)(3) declares that statements on issues reserved to commissioner are neither valuable nor persuasive.[5] As

---

[5] The following statements address issues reserved to the Commissioner and are therefore "inherently neither valuable nor persuasive": (i) Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work; (ii) Statements about whether or not you have a severe impairment(s); (iii) Statements about whether or not your impairment(s) meets the duration requirement; (iv) Statements about whether or not your impairment(s) meets or medically equals any listing in the Listing of Impairments; (v)

such, the ALJ may reject such evidence without further articulation. *Id.* However, Mrs. Hines' report was not merely a collection of declaratory statements regarding Plaintiff's ability to work and eligibility for disability benefits. Rather, she detailed Plaintiff's symptoms, daily activities, and observed limitations. (AR 448–54). Plaintiff argues the court should credit Mrs. Hines' testimony. (AR 23). The Court agrees.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993)); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). Mrs. Hines provided relevant evidence to the court. To discount her testimony, the ALJ had to provide germane reasons for doing so. Defendant argues that when an ALJ provides germane reasons for rejecting the claimant's testimony, "it follows that the ALJ also gave germane reasons for rejecting the lay witnesses' testimony." *Molina,* 674 F.3d at 1114. (AR 17). However, as the ALJ erred in rejecting Plaintiff's symptom testimony, Defendant's argument fails.

**E. THE VOCATIONAL EXPERT'S TESTIMONY WAS BASED ON AN INCOMPLETE HYPOTHETICAL.**

Plaintiff argues the ALJ erred in omitting the limitations set by doctors Geary and Salari, the lay witness, and himself in her hypotheticals to the VE. (OB at 24). The ALJ properly rejected the limitations set by Dr. Salari and Dr. Geary. However, the ALJ erred in rejecting Plaintiff's symptom testimony and the corroborating lay witness testimony. Nevertheless, during cross-examination, Plaintiff's attorney elicited testimony from the VE addressing the contested limitations. (AR 75–77). The Court therefore finds the error

---

Statements about what your residual functional capacity is using our programmatic terms about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of descriptions about your functional abilities and limitations (see § 404.1545); (vi) Statements about whether or not your residual functional capacity prevents you from doing past relevant work; (vii) Statements that you do or do not meet the requirements of a medical-vocational rule in Part 404, Subpart P, Appendix 2; and (viii) Statements about whether or not your disability continues or ends when we conduct a continuing disability review. 20 C.F.R. § 404.1520b(c)(3).

harmless.

### F. THE CREDIT-AS-TRUE-RULE

Plaintiff argues this Court should impose the credit-as-true rule and remand for a payment of benefits. When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). However, under rare circumstances, the Court may remand for an immediate calculation of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). To invoke the rule, first, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed with no outstanding issues. *Id*. at 1101. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted).

It is inappropriate to invoke the rule when "additional proceedings can remedy defects in the original administrative proceeding . . . ." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quotation marks and citation omitted). It is likewise inappropriate to invoke the rule when there are ambiguities in the record. *Treichler*, 775 f.3d at 1100. Though the ALJ made legal error in failing to provide sufficient reasons for rejecting Plaintiff's symptom testimony, the Court cannot say the record is without ambiguity.

### V. CONCLUSION

Plaintiff raises materially harmful error on the part of the ALJ, and, for the reasons set forth above, the Court must reverse the SSA's decision and remand for further proceedings.

///

///

///

///

**IT IS THEREFORE ORDERED** reversing the January 29, 2021, decision of the Administrative Law Judge, (AR 13), as upheld by the Appeals Council on August 17, 2021 (AR 1). The Court remands this matter for further proceedings consistent with this Order.

Dated this 10th day of November, 2022.

*[signature]*
Honorable Steven P. Logan
United States District Judge